IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

TYIESHA WOOTEN,

    Plaintiff,

v.   Case No. 2:18-cv-2242-MSN-cgc

PARK HOTELS AND RESORTS, INC.,
d/b/a HAMPTON INN AND SUITES,

    Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

---

Before the Court is Defendant's Motion to Dismiss and Compel Arbitration (ECF No. 15), filed May 18, 2018. Plaintiff responded on June 28, 2018. (ECF No. 24.) Defendant filed its reply July 12, 2018. (ECF No. 25.) For the following reasons, Defendant's motion is **GRANTED**.

### BACKGROUND

Plaintiff is a former housekeeper at the Hampton Inn and Suites on Shady Grove Road in Memphis, Tennessee ("Hampton Inn"). (ECF No. 7 at PageID 16.) Plaintiff alleges that during her employment, she was "subjected to multiple and repeated acts of sexual harassment and misconduct by a male employee of Defendant." (*Id.*) Plaintiff alleges that this male employee also harassed and engaged in acts of misconduct with other female co-workers, and that Defendant was aware of his behavior and failed to discipline the male employee. (*Id.* at PageID 17.)

Plaintiff alleges that the male employee made especially intimidating, harassing, and inappropriate comments to her on January 10, 2018, and that she made verbal and written complaints to Defendant's management about the male employee's behavior that same day. (*Id.* at PageID 18.) Plaintiff alleges that Defendant "effectively dismissed Plaintiff's report regarding

the harassing male employee," and Defendant's only response to Plaintiff's report was to ask both the male employee and Plaintiff to refrain from communicating with each other while at work. (*Id.* at PageID 19.)

Plaintiff alleges that supervisors at the Hampton Inn informed the male employee that Plaintiff had made a formal complaint against him for his conduct, and subsequently, on February 1, 2018, the male employee sexually threatened, intimated, and assaulted Plaintiff. (*Id.*) Plaintiff alleges that she again reported this incident to management and was similarly dismissed. (*Id.* at PageID 19–20.) Plaintiff alleges that she was constructively discharged as a result of the unredressed harassment and intimidation she experienced while working at the Hampton Inn. (*Id.* at PageID 20.)

In her Amended Complaint, Plaintiff asserts claims for sexual harassment and sexual discrimination in violation of the Tennessee Human Rights Act and negligent infliction of emotional distress. (ECF No. 7 at PageID 21–23.)

Relevant to Defendant's motion, Plaintiff signed an "Agreement Re At-Will Employment and Arbitration" ("Arbitration Agreement") on February 22, 2016, her first day of employment at the Hampton Inn. (ECF No. 15-1.) The Arbitration Agreement provides in relevant part as follows:

> It is hereby agreed by and between the below named "Employee" (sometimes also "I" or "me") and the below named "Company" that the Company or the Employee can terminate the employment and compensation of Employee at any time, with or without cause and/or with or without notice, at the option of the Company or the Employee.
>
> The Company and I further agree and acknowledge that final and binding arbitration shall be the exclusive forum to hear and decide any dispute between the Company and me, except for claims for Workers' Compensation, Unemployment Compensation, claims brought to secure rights granted under the terms of a collective bargaining agreement, or any other claim that is non-arbitrable under applicable state or federal law. . . . Except for the claims carved out above, this Agreement includes all common-law and statutory claims, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination,

2

>unfair competition and misappropriation of trade secrets, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected status which may be brought under applicable state or federal law.

(ECF No. 15-1.)

Plaintiff signed the Arbitration Agreement on February 22, 2016 as the "Employee." (ECF No. 15-1 at PageID 53.) Lori Seymour, former Director of Operations at the Hampton Inn, signed the Arbitration Agreement on behalf the "Company," which is listed as "Hampton Inn & Suites" on the "Company Signature" line. (ECF No. 15-1 at PageID 53; ECF No. 25-1 at PageID 218.)

The corporate structure of Defendant involves multiple wholly-owned entities. During Plaintiff's employment at the Hampton Inn, there was a corporate reorganization involving Defendant. The Hampton Inn is owned by HLT Memphis LLC ("HLT"), which also owned the Hampton Inn at the time Plaintiff was hired. (ECF No. 15-1 at PageID 51; ECF No. 25-1 at PageID 218–19.) The sole member of HLT is Hilton CMBS Holdings, LLC. (ECF No. 15-1 at PageID 50.) The sole member of Hilton CMBS Holdings, LLC is Hilton Domestic Property, LLC, whose sole member is Park Intermediate Holdings, LLC, whose sole member is Defendant. (*Id.* at 50–51.)

At the time Plaintiff was hired, Plaintiff and Ms. Seymour were both employees of Hilton Worldwide, Inc., which was a subsidiary of Hilton Worldwide Holdings, Inc. ("Hilton Parent") (ECF No. 25-1 at PageID 217–18.) On June 1, 2016, Hilton Worldwide, Inc. changed its name to "Park Hotels & Resorts, Inc." ("Park Hotels") (ECF No. 25-1 at PageID 217.) On January 3, 2017, Hilton Parent completed a spin-off of Park Hotels, i.e. Defendant, and its subsidiaries by distributing shares of Park Hotels' stock to the stockholders of Hilton Parent. (ECF No. 25-1 at PageID 218.)

**DISCUSSION**

I.     **Agreement to Arbitrate**

Defendant argues that Plaintiff's claims are covered by the terms of the Arbitration Agreement, and the Court should compel arbitration and dismiss this matter.[1] Plaintiff asserts that the Arbitration Agreement cannot be enforced primarily because Defendant is not a party to the Arbitration Agreement, and also because Defendant did not own the Hampton Inn or have an agency relationship with "Hilton" when the Arbitration Agreement was signed. (ECF No. 24 at PageID 92.)

The Federal Arbitration Act (the "FAA") requires a district court to stay proceedings upon its determination that the issue involved in the suit is subject to arbitration under an arbitration agreement. 9 U.S.C. § 3. Section 4 of the statute provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order from the district court compelling arbitration. 9 U.S.C. § 4. "Under the FAA, a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims." *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001), cert. denied, 535 U.S. 970, 122 S. Ct. 1436, 152 L.Ed. 2d 380 (2002). Because the FAA embodies "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L.Ed. 2d 765 (1983), courts must examine the

---

[1] Defendant also argues in a footnote that it was not Plaintiff's employer at the time of the events leading to Plaintiff's complaint. Defendant asserts that HLT became Plaintiff's employer in January 2017, and that Defendant cannot be held liable as a "joint employer" of Plaintiff for events that transpired when HLT was Plaintiff's legal employer. Plaintiff has not named HLT in this action, and neither party has sought leave to add HLT. The Court therefore limits its consideration to whether the parties currently before the Court entered into a valid agreement to arbitrate, and if so, whether Plaintiff's claims are within the scope of that agreement.

4

contract at issue with that policy preference in mind. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1088, 148 L.Ed. 2d 963 (2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S. Ct. at 941; *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) ("It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration."); *Stout*, 228 F.3d at 714 ("[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.").

"When faced with a motion to compel arbitration, a district court must follow the procedure set forth in [S]ection 4 of the FAA . . . . " *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[I]f a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration." *Cronk v. TRG Customer Sols., Inc.*, No. 1:17-cv-00059, 2017 WL 5517259, at *3 (M.D. Tenn. Nov. 17, 2017) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citation omitted) ("The required showing mirrors that required to withstand summary judgment in a civil suit." (citation omitted)).

Notwithstanding the FAA's policy preferences, "arbitration is a 'matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L.Ed. 2d

5

648 (1986)). "Because disputes over arbitrability are usually questions of contract formation and interpretation, federal courts should apply state law so long as it is generally applicable to all contracts." *Dawson v. Rent-A-Ctr. Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012) (citing *Seawright*, 507 F.3d at 972 and *Fazio*, 340 F.3d at 393). In Tennessee, "an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." *Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-02140, 2011 WL 294407, at *4 (W.D. Tenn. Jan. 27, 2011) (quoting *Thompson v. Hensley*, 136 S.W.3d 925, 929–30 (Tenn. Ct. App. 2003)).

The Sixth Circuit generally uses four factors to determine when to grant a motion to compel arbitration: "(1) Whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (citing *Fazio*, 340 F.3d at 392).

The central disagreement here pertains to the first prong in the Sixth Circuit factors: whether the parties agreed to arbitration; specifically, whether Defendant is a signatory or is otherwise entitled to enforce the Arbitration Agreement. Plaintiff admits that she signed the Arbitration Agreement. (ECF No. 24 at PageID 87–88.) Plaintiff alleges that at the time she was hired, her employer was "Hilton Worldwide," and that Ms. Seymour, the management employee who signed the Arbitration Agreement, was also an employee of "Hilton Worldwide." (*Id.* at PageID 88.) Accordingly, the Court finds, and Plaintiff appears to admit, that there is a binding agreement to arbitrate between Plaintiff and "Hilton Worldwide," i.e., her employer upon her initial date of employment. (ECF No. 24 at PageID 87–88.) Plaintiff alleges, however, that

6

"Hilton Worldwide" ceased being her employer on January 3, 2017, when Defendant "took over ownership" of the Hampton Inn. (ECF No. 14 at PageID 88.) Plaintiff asserts that Defendant is a different, separate entity from "Hilton Worldwide," and that Defendant is not otherwise entitled to enforce the Arbitration Agreement. (ECF No. 24 at PageID 88–89; 92.)

Notwithstanding Plaintiff's assertions, Defendant has presented evidence that it is a signatory to the Arbitration Agreement. Specifically, Defendant has presented evidence that its former legal name was "Hilton Worldwide, Inc.," and that it changed its name to "Park Hotels & Resorts Inc." on June 1, 2016 by filing a Certificate of Amendment to its Certificate of Incorporation with the Secretary of State of Delaware. (ECF No. 25-1 at PageID 217, 222.) Further, Defendant confirms Plaintiff was initially employed by Hilton Worldwide, Inc., and that Ms. Seymour, who signed the Arbitration Agreement on behalf of the "Company," was also an employee of Hilton Worldwide, Inc. (ECF No. 25-1 at PageID 218.) Plaintiff does not point to anything in the record to contradict this evidence. Thus, the Court finds that both Plaintiff and Defendant are signatories to the Arbitration Agreement.

The Court also finds that there is no genuine dispute that the Arbitration Agreement was supported by sufficient consideration. Under Tennessee law, "[m]utuality of promises is 'ample' consideration for a contract. A mutual promise 'in itself would constitute a sufficient consideration.'" *Seawright*, 507 F.3d at 974 (applying Tennessee law); *see also Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001) (quoting *Rodgers v. S. Newspapers, Inc.*, 379 S.W.2d 797, 800 (Tenn. 1964)). In *Seawright*, the Sixth Circuit held that because the arbitration agreement was binding on both the employer and employee, regardless of who requested arbitration, there was mutuality of obligation and thus adequate consideration under Tennessee law. *Seawright*, 507 F.3d at 974. The same principle applies to the instant case. Furthermore, there is no genuine dispute that the Arbitration Agreement was free from fraud, is

7

not against public policy, and is sufficiently definite to be enforced.

The subsequent change of Defendant's legal name does not affect its rights or obligations under the Arbitration Agreement. *See Memphis Water Company v. Magens & Co.*, 83 Tenn. 37, 43 (1885) (citation omitted) ("[A] mere change of name in an existing corporation, either simply or by way of consolidation with other companies, would not affect the liabilities of a corporation."). Similarly, the spin off by Hilton Parent of Defendant resulted in a change in ownership of Defendant, which does not affect the rights or obligations of Defendant, which, as a corporation, is a legal entity that is separate and distinct from its owners. *See Cont'l Bankers Life Ins. Co. of the South v. Simmons*, 561 S.W.2d 460, 464 n. 2 (Tenn. Ct. App. 1977) ("Once corporate existence has begun, even though, . . . the stockholders, directors, and corporate name may change, the corporation retains the same rights, liabilities, and responsibilities until dissolved.").

Plaintiff's argument that Defendant's promulgation of a new employee handbook negates its ability to enforce the Arbitration Agreement is also unavailing. Plaintiff has not pointed to anything in the record to support that the new employee handbook abrogated the Arbitration Agreement, which by its express terms could "be modified only by a writing signed by the Chief Executive Officer or the President of the Company and [Plaintiff], referencing th[e] [Arbitration] Agreement and stating an intent to revoke or modify it." (ECF No. 15-1 at PageID 53.) Plaintiff points out that the new employee handbook declared that it "replaces and supersedes all prior associate handbooks you may have received during your employment with Park or its predecessors" and states that this "presumably includ[es] the Hilton Employee Handbook [that] encompassed the [A]rbitration [A]greement." Plaintiff, however, does not explain why she presumes that the Arbitration Agreement would be affected by this generic language in the handbook, which does not reference arbitration generally or the Arbitration Agreement specifically. Even though the Arbitration Agreement was executed as part of Plaintiff's new hire

8

paperwork, there is nothing in the record to support Plaintiff's "presumption" that it was part of the superseded employee handbook. (ECF No. 24-1 at PageID 98; ECF No. 25-1 at PageID 219.)

Plaintiff's remaining arguments are all premised on Defendant not being a party to the Arbitration Agreement. For example, Plaintiff asserts that the Court must find there was "substantial continuity" "between Hilton and Defendant" for Defendant to be able to compel arbitration. Plaintiff cites to *Howard Johnson Co. v. Detroit Local Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 256, 94 S. Ct. 2236, 2240, 41 L. Ed. 2d 46 (1974), arguing that "federal courts demand such an examination on issues of successor rights to an arbitration agreement." (ECF No. 24 at PageID 95.) *Howard Johnson Co.* is part of the Supreme Court's jurisprudence on successor liability in the context of collective bargaining agreements. *Howard Johnson Co.* is not applicable here for two main reasons: first, because Defendant is not a "successor" entity; and second, because there is no collective bargaining agreement at issue. Plaintiff's remaining arguments are similarly premised on Defendant being a "successor" or otherwise a non-signatory to the Arbitration Agreement, and because the Court has found that both Plaintiff and Defendant are signatories to the Arbitration Agreement, it is not necessary to analyze application of these remaining theories. In sum, the Court finds that both parties agreed to arbitration as set forth in the Arbitration Agreement, to which they are both signatories, and that neither the name change or spin-off of Defendant, nor the promulgation of the new employee handbook, terminated or otherwise made the Arbitration Agreement unenforceable.

The Court turns next to the scope of the Arbitration Agreement. The Arbitration Agreement is broadly written to include "any dispute" between the parties, including "all common-law and statutory claims." (ECF No. 15-1.) When an arbitration clause is broadly written, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to

9

exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003)). The Arbitration Agreement specifically carves out "claims for Workers' Compensation, Unemployment Compensation, claims brought to secure rights granted under the terms of a collective bargaining agreement, or any other claim that is non-arbitrable under applicable state or federal law." (ECF No. 15-1.) Plaintiff's claims are not related to workers' or unemployment compensation or a collective bargaining agreement, and Plaintiff does not argue that her claims are not arbitrable under applicable state or federal law. Thus, all of Plaintiff's claims are within the scope of the Arbitration Agreement.

As to the last two factors set forth by the Sixth Circuit, neither are at issue. Plaintiff's claims are based on state statutes and common law, not federal statutes, and all of Plaintiff's claims are subject to arbitration.

Based on the foregoing analysis, the Court finds that Plaintiff's claims must be arbitrated.

### II. Stay or Dismissal

A final consideration is whether the Court should dismiss this matter, or, instead, stay these proceedings while the claims proceed through arbitration. Defendant argues that the Court should dismiss the case because all of Plaintiff's claims are subject to arbitration. (ECF No. 15-2 at PageID 62–63.)

Section 3 of the FAA provide for a stay of court proceedings "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Based on this language, several circuit courts have held that it is proper for a court to retain jurisdiction and stay the pending litigation until arbitration is concluded. *See Lloyd v. HOVENSA, LLC*, 369 F.3d 263 (3d Cir. 2004); *Adair Bus. Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953 (10th Cir. 1994). However, other circuit

courts have focused instead on the underlying polices of the FAA and held that a court may dismiss the action before it if all the parties' claims in the suit will be referred to arbitration. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988). The Sixth Circuit appears to follow the latter approach. *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument."); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1164 (5th Cir. 1992), for the proposition that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"). Numerous district courts in this circuit, relying on *Ozormoor*, have dismissed actions where all claims are subject to arbitration. *See Young v. Exeter Finance Corp.*, No. 3:19-0363, 2019 WL 3753713 (M.D. Tenn. Aug. 8, 2019); *Aqua-Chem, Inc. v. Bariven, S.A.*, No. 3:16-cv-553, 2018 WL 4870603 (E.D. Tenn. Mar. 16, 2018); *Wood v. Greenfield Assisted Living of Memphis, LLC*, No. 15-cv-02151, 2015 WL 11051100 (W.D. Tenn. June 22, 2015).

Here, all of Plaintiff's claims are within the scope of the Arbitration Agreement. Therefore, the Court dismisses Plaintiff's claims, rather than staying these proceedings pending arbitration.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss and Compel Arbitration is **GRANTED**. Plaintiff is hereby **COMPELLED** to arbitrate all pending claims against Defendant, and this matter is hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED**, this 16th day of October, 2019.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE